May it please the Court. My name is Todd Borden, and I represent the petitioner in this matter, Anthony McGee. I'm going to try to save two minutes for rebuttal, and I'll make sure to keep an eye on the clock as we move along. So Mr. McGee is here today before the Court because he's applied for permission to file a second or successive Section 2255 motion in which he seeks to raise a claim based off the Supreme Court's decision from last year in McCoy v. Louisiana. And I'd like to emphasize at the outset sort of the nature of this Court's inquiry at this preliminary gatekeeping stage. This Court has emphasized most recently in its case of Henry v. Spearman that the inquiry at this stage is extremely limited, that the any petitioner need satisfy only a light burden in making out a prima facie showing that his application satisfies the substantive standard for an SOS petition. And part of the reason for this is that this panel's decision today is entirely unreviewable. I'm statutorily barred from petitioning for rehearing, as is my opposing counsel, and we can't petition for cert. So because of that, this Court noted in Henry that courts of appeals should really err on the side of authorizing these motions, in large part because all it means is I would get the opportunity to raise Mr. McGee's claim in front of Judge Chen in the district court, Judge Chen then not applying a prima facie standard, but actually applying the standard substantively and would have to rule one way or the other whether we satisfy it. So sort of with those, you know, sort of with that background as to why we understand the standard. Yeah. Sorry. Sorry. That is perhaps too much time on that, but I think it is important here. But let's then get to the merits. And so to satisfy the standard, Mr. McGee needs to make a prima facie showing that his claim under McCoy relies on a new rule of constitutional law that's been made retroactive on collateral review by the Supreme Court that wasn't previously available. Now, the parties agree that we meet three of those four standards, and the question here only is whether or not the rule announced in McCoy at the prima facie level is a watershed rule of criminal procedure. Now, under this Court's precedent, in Hughes in particular, essentially the inquiry becomes whether or not he satisfies that Teague watershed rule exception. And under that exception, particularly as articulated in Bochting by the Supreme Court, there's really a — it's a two-part inquiry. First, the question is whether or not the rule in McCoy is necessary to permit an impermissibly large risk of an inaccurate conviction. And then the second component is whether or not the rule alters our understanding of bedrock procedural principles. So as to that first point, the reason why I think the rule in McCoy here, which obviously concerns — you know, which bars counsel from conceding a client's guilt against the client's wishes, the reason it prevents such a risk of inaccurate conviction is because it guarantees that there's at least one lawyer for the defendant in the room. It guarantees that we have the critical adversarial testing process, which the Supreme Court has repeatedly emphasized is a critical component of any criminal trial process, particularly in Cronick and Penson and in Herring and cases like that. And so I think we've at least made a prima facie showing that it improves that standard because certainly when you have a lawyer conceding guilt, that really pretty much categorically means you're not going to have any sort of testing as to whether or not — Sotomayor But that's not the ground the Supreme Court relied on in McCoy, is it? Fisher That's true, Your Honor. So it is true that in McCoy, you know, the Court said we're not applying an ineffectiveness test. We're instead rooting this in the Sixth Amendment right to a client having autonomy. But even though the particular constitutional guarantee in the Sixth Amendment is rooted in client autonomy, I think, you know, they weren't expressly addressing the watershed procedure question in McCoy itself because it was a direct appeal and they had no occasion to. And I do think when you look to — you know, I think a comparison to Gideon may also be helpful because we know from the Supreme Court's of a watershed rule is Gideon. And I think much in the same way that, you know, making sure you have a lawyer for indigent felony defendants bolsters that adversarial testing process. I think the same sort of line of reasoning would apply just as much because, in a way, when you have counsel expressly conceding guilt, you're not having two lawyers doing the testing. It's almost like we're in a pre-Gideon situation in a certain sense. Or at least we're in a situation where the lawyer is substituting his or her own judgment for the client's judgment about whether or not to contest guilt. So the second balking standard is that it needs to alter our understanding of bedrock procedural principles. And one critical point I'd like to emphasize is that the rule announced in McCoy is a structural error rule. Now, we know from Tyler v. Cain that the category of structural error and the category of watershed rules, they're not coextensive. But we do know from this Court's decision in Sanchez-Cervantes, which held Apprendi was not a watershed rule, in that case, this Court said that only structural errors can be watershed rules, even if all structural errors are rules that create structural errors or watershed rules. So I think that that at least is pointing in the direction that this could be a watershed rule. It at least meets that standard. And again, under a prima facie showing that we need to make here, I think that's a pretty strong indicator that it may meet the second standard. The other reason why I suggest that it meets that would be it's being rooted in the Sixth Amendment. Gideon itself also is obviously very much a Sixth Amendment, critical Sixth Amendment decision. And this rule here is also rooted in that. I'd also point to the—regarding the Sixth Amendment, I'd point to the Eleventh Circuit's case in Howard v. United States. It is an instance where a circuit court found that a watershed rule existed, and it was an extension of the rule in Gideon to cases involving suspended sentences. So I think that it at least further bolsters my claim here that it is a— that the Sixth Amendment sort of basis is important. I'd like to say a few words about whether or not Mr. McGee's claim meets this standard. I think that's the easier of the two showings I need to make for you today. Under Henry, I only need to show a non-frivolous extension of the rule. And I think here we have a situation where trial counsel pretty clearly said, you know, look, my client had in his hands 14 baggies of methamphetamine, and— there was an express prohibition by the client on what the attorney wanted to do, right? That is true, Your Honor. So why is this a fair extension? The reason I would suggest it's a fair extension is that counsel here did not ask Mr. McGee one way or the other or did not alert him that he was considering a guilt concession strategy. And so our position would be that you can't meaningfully exercise the McCoy right if counsel isn't even — just springs it on the client without engaging in that consultation. And I would point out that I think this is distinguishable from the Florida v. Nixon case, which is sort of the other category, because there we have — the client was informed, like the client in McCoy. He just gave ambivalent answers. One quick last point about the non-frivolous extension, too. I'd urge the panel to look at the Henry case, because the extension there is the rule from Johnson invalidating the ACCA's residual clause. And it was extended to substantive liability under California's second-degree felony murder rule. So those are pretty — pretty different sorts of applications for the rules. So I think — like I said, I think the question about whether or not McCoy substantiates my client's claims is the easier of the two showings I'd have today. And I'd like to reserve the remainder of my time. Thank you, counsel. Good morning, Your Honors, and may it please the Court. Daniel Cain for the United States. Mr. McGee's application should be denied for two independent reasons. First, the Supreme Court hasn't made the rule of McCoy retroactive on collateral review, either expressly or through a combination of holdings. And second, the rule of McCoy does not substantiate Mr. McGee's claim. And I'd like to address each in order briefly. First, everyone here agrees that the Supreme Court did not expressly make the rule of McCoy retroactive. And it's true that the Court can make a rule retroactive through a combination of holdings. But as this Court has held and as the Supreme Court has held, that's a high bar. It's met only if the Supreme Court's holdings, quote, logically permit no other conclusion than that the rule is retroactive. So the question here isn't just whether this — the Teague exception, the second Teague exception is satisfied. It's whether McCoy admits of no other conceivable holding that it — that it satisfies the second Teague exception. And second, the bar is even higher where the rule at issue is a procedural rule rather than a substantive rule. That's because, as this Court knows, procedural rules, unlike substantive rules, ordinarily don't apply retroactively. Only watershed procedural rules do. And that's an extremely narrow class that the Supreme Court has repeatedly emphasized. It's not likely that there will be any further entrance to that class. So that's why the criteria to qualify as a watershed rule are very stringent, as defense counsel admits. First, infringement of the rule must seriously diminish the likelihood of obtaining an accurate conviction. And second, the rule must alter our understanding of the bedrock procedural elements essential to a fair proceeding. Now, no court, as far as the government is aware, has held that the rule of McCoy satisfies those criteria. The Tenth Circuit has held that it doesn't. And that's because it doesn't. As to the first, the Supreme Court was unusually clear that the rule of McCoy is not a rule, quote, designed to protect the defendant from erroneous conviction. Rather, it's a rule designed to promote autonomy. And McCoy itself was a good example. In that case, there was no question that Mr. McCoy was guilty of the murders. That's just not what the issue in the Supreme Court was. It was whether the defendant's autonomy interests had been violated by defense counsel conceding his guilt over his objection. Likewise here, there's just no question that Mr. McGee was guilt — that Mr. McGee possessed the 14 baggies of methamphetamine in his pocket. It was just not controverted. And as Justice Alito explained, I think persuasively in his dissent in McCoy, whether or not the rule in McCoy is designed to promote accuracy of convictions, in practice it's exceedingly unlikely that defense counsel, particularly in noncapital cases, will concede a defendant's guilt absent overwhelming evidence. That's because defense attorneys are bound to zealously represent their clients' interests. And there's just no incentive for a defense attorney to concede guilt to a charged offense, particularly not in a noncapital case. And second, the rule of McCoy doesn't alter our understanding of the bedrock procedural elements. Now, the rule at issue in McCoy, that an attorney can't concede her client's guilt of a charged offense over the defendant's objection, that's a new rule, but it's based on, it's an application of a well-established principle that a defendant is the master of his own defense. That's a very important rule. And that's why the Court cited multiple sources for that rule, including Gannett Coe v. DePasquale and Weaver v. Massachusetts. So for good reason, Mr. McGee in his briefs repeatedly refers to McCoy as a rule that, quote, derives from or, quote, clarifies or implicates a bedrock procedural rule. And that may well be, but that's fatal to his claim. Because as the Supreme Court made quite clear in Wharton v. Bochting, a rule that is based on a bedrock right is not itself a watershed rule of criminal procedure. Instead, quote, a new rule must itself constitute a previously unrecognized bedrock procedural element. And again, I think it's worth remembering the standard here. The question isn't whether the Teague exception is satisfied. It's whether the Supreme Court's holding in McCoy logically permits no other conclusion but that it's a watershed rule. This is not the first watershed rule since Gideon. And so for that reason, Mr. McGee's application should be denied. There's a second reason to deny Mr. McGee's application, which defense counsel was alluding to in the latter half of his presentation, which is that his claim doesn't rely on McCoy in the sense necessary under the 2255H2 gatekeeping proceedings. And that's because he's not pressing a McCoy claim. Unlike Mr. McCoy, he didn't express his opposition to a guilt concession strategy. Now, the difference, as he points out, is as alleged, though the government would reserve the right to dispute this allegation, he alleges that his defense counsel never before trial consulted with him. Isn't that even worse, though, if you're not even given the opportunity to object to your counsel's strategy of admitting guilt? Well, Your Honor, whether or not — whether it's worse or not I think isn't the question at issue here. The question is whether or not — It's way more injurious to the client's autonomous rights to make — to guide his own defense. Well, assuming arguendo that it is worse for the defendant's interest, it's still not a McCoy claim. It's a Strickland claim. As the Court in Florida v. Nixon made clear, the defendant has the — the defense counsel has the obligation to consult with his client on fundamental matters of defense strategy. And that's true. The government doesn't gainsay that that's a right that the defendant has, and it's a Sixth Amendment right. But it's a Sixth Amendment right that's evaluated, that's funneled through Strickland. And indeed, this Court has processed such a claim through Strickland, and that's in United States v. Thomas. Under precisely these circumstances, this Court affirmed this wasn't a 2255H2 gatekeeping proceeding, but it was a first habeas — a first 2255 application. And this Court held that where defense counsel failed to consult on a guilt concession strategy with his client, that claim was evaluated through Strickland. The Supreme Court has said as much in Strickland itself, saying that defense counsel has that obligation to consult with his client. And so, Your Honor, Mr. McGee's claim doesn't rely on McGee. It doesn't seek a nonfrivolous extension of McCoy. It seeks application of an entirely different rule. And that he may not do through 2255H2. He could have pressed a Strickland claim in his first 2255 application. Having failed to do so, he can't resuscitate that claim in a successive application. Unless the Court has any further questions, I think we'll rely on our briefs. Thank you very much. Thank you, counsel. So in response to the government's argument about whether or not this rule has been made retroactive, I'd like to point out that Justice O'Connor's concurrence in Tyler does clarify that it can be made retroactive through a combination of holdings. And in Hughes, this Court has essentially said that one of those holdings would be Teague itself. So I don't think there's necessarily a huge distinction between satisfying the Teague watershed exception, challenging though that may be, and satisfying it on the second or successive standard. For that particular exception, I don't think it makes a huge difference. The government alluded to the fact that this would be the first watershed rule since Gideon. A couple of responses to that. Again, this is only a prima facie showing, so it's not a conclusive determination. Second, the Teague framework has only been around since 1990, so there may well have been watershed rules that were in that intervening period. I mean, I might suggest Strickland might fall into that category. There may be others. It's pretty tough, though. I mean, Summerlin v. Stewart was a pretty strong case, I thought, for establishing a watershed rule, and the Supreme Court said no. I don't disagree, Your Honor, that it is a — that this is the hardest part about my case, but I would also point out, and I cited it in my reply brief, there have been two examples at least that I could find where circuit courts have recognized watershed rules, including one by this Court. I want to say a word about the Strickland claim. I think the government falsely suggests it can either be a Strickland claim or a McCoy claim, because you could both be ineffective and violating the client's autonomy rights, and I think as Judge Wardlaw alluded to, you know, not even asking about it I think is arguably worse, and in any event, I think it's a non-frivolous extension. So for these reasons, I would ask the Court to authorize my client's petition. Thank you, counsel. The case just argued will be submitted for decision.
judges: Thomas, Tashima, Wardlaw